Before we begin, I would like to take note of the first time I've had the pleasure of sitting with our new colleague, Judge Toronto. It is his first week here. I look forward to many years of his participation and serving on our court. We have six cases on our calendar this morning. A trademark case, a patent case, two veterans appeals, a trade case, and a government employee case, indicating the diversity of our jurisdiction. The employee case and one of the veterans cases are submitted on the briefs and therefore will not be argued. Our first case is Levi Strauss v. Abercrombie & Fitch, 2012, 1495. Mr. Gilchrist. Thank you, Your Honor. It's a pleasure to court. Welcome, Judge Toronto. My name is Greg Gilchrist. I'm from Kilpatrick-Townsend. I represent Levi Strauss. This is my colleague, Levi Strauss' chief intellectual property officer. Your Honors, we're here because the Trademark Board granted summary judgment of our opposition and cancellation challenges on dilution likelihood of confusion grounds. The Board reasoned that our claims before the Board were precluded by in the Northern District. It's our contention that there were no issues that were identical in that district court litigation and no findings could have been developed from that case that would have disposed of our proceedings. Why shouldn't there be a reversal anyway if the TTAB decision was premised on either claim preclusion or issue preclusion? Hasn't that been wiped away by the Ninth Circuit's reversal? Well, certainly in our view it has, Your Honor. Whatever findings there were regarding similarity, which the Board relied on in its decision to grant summary judgment, whatever findings there were about similarity were wiped away, as you say, by the Ninth Circuit. In other words, the jury verdict doesn't survive the Ninth Circuit's ruling on dilution. Now, I should be fair to their position, Your Honor. The jury made findings on the likelihood of confusion in the infringement case. We did not appeal that ruling. The jury's infringement claim. We appealed the district judge's ruling on dilution, and that ruling was completely reversed. But what you argue is one thing, but you've got a judgment from the district court which has been reversed, right? And then this party, whose name begins with rule, withdrew, and you dismissed your claim, right? That's true. After the reversal, when we came back to the district court, we voluntarily dismissed because rule had gone out of business. They had started using the trademark. Abercrombie had started using the trademark on a different line of products, and we tried to expand the litigation to cover those products, and Abercrombie took the position that we could not. Can I ask you, I mean, it has seemed to me that we have the four boxes here. We've got two doctrines, issue preclusion and claim preclusion, and we have two judgments. We have the 2009 infringement judgment, which became final because you didn't appeal. Right. And then we have the 2011 dilution judgment, which was a judgment on the merits in the sense that every dismissal with prejudice is a judgment on the merits. Now, I want to put aside the issue preclusion questions for a moment and focus just on claim preclusion. Okay. As I read the board decision, the board decision said under this court's decision in Jett and the follow-on decision, Mayor Berkshire, the infringement judgment, or non-infringement judgment, I guess it was, doesn't generate claim preclusion. I didn't see that the board addressed whether the 2011 dilution judgment, the one after you return from the Ninth Circuit, generates claim preclusion, and I'm going to assume it doesn't generate issue preclusion because a dismissal without prejudice actually decides nothing. Right. Talk to me about the claim preclusion question based on the dilution judgment after you return from the Ninth Circuit. Certainly, Your Honor. From my perspective, it's resolved by Jett. Both dilution and infringement are... It's not actually resolved by Jett, right, because in Jett and Mayor, the only earlier judgment was a non-infringement judgment. That's perfectly fair, Your Honor. All I'm saying is that the reasoning of Jett applies equally to the discussion about whether there are transactional facts regarding dilution that are the same in front of the district court as they are in front of the board. Dilution, I think, is the same set of factor tests that's going to be resolved in the district court under a different standard than is going to be resolved in the... Why is that? I understand that on infringement, likelihood of confusion has a lot to do with the channels in which the goods are marketed and, you know, whether their jeans are sitting in Macy's on the shelves right next to yours or in separate stores. Where is it in the dilution standard that the particular uses made by Abercrombie have a bearing on whether your mark is going to be diluted? Why isn't it just the mark and the mark? Right. And the answer is because dilution turns on whether there's an association drawn by consumers between the two products such that it ends up diluting and blurring the distinctiveness of the senior mark. And likelihood of confusion is a narrower but included proposition in that association. There are lots of cases, I could give you some citations, that liken the, in particular when we're talking about dilution here between two competing products, that essentially say that the likelihood of confusion in favor of the senior mark. And also, broader than that, if there's no confusion, but there is this association that creates blurring. So, the dilution test, this association requires the same sort of abstraction at the board level determining registrability that will assume that the goods are moving through all channels of distribution, that they're being used at all the different price points are being used. Could you, in your dilution claim in the California case, have introduced evidence of not just the use that Abercrombie was making of its mark on the rule line, but other uses that it could be making? Would that have been a... Could you have and did you? The answer to, we did not. I'll take the second question first. And the answer is we could not. Dilution, just like trademark infringement in the district court, is going to require that we attack actual uses in commerce and say that our actual use in commerce of our mark in that commercial context is likely to create dilution, that there's this association that will be drawn. There's no opportunity in the district court for us to argue that there's this abstraction that the jury needs to consider that the goods may move in all channels. They may be exposed to all consumers. Was the Gilly Hicks product actually being used before you dismissed in the California action? Not to our knowledge, Your Honor. The first we learned of the Gilly Hicks use was when, I think a third trademark application was filed that had the Gilly Hicks use attached as a specimen. And we learned that just before the appeal was decided and after it was argued. So your position is that all of those intended uses that are now listed before the board, that all of those things are intended uses that were not actual uses at the time of the California action? Yes. The only use that was involved at the time of the California action was the rule use in one type of store, one website, at a certain price point. And Your Honor, only one or two of the products that are in the registrations are many different products. So the litigation involved a very specific commercial context that was not involved, would not be involved in the board. Have you filed any other claims with respect to either dilution or infringement as it relates to the other uses? We have not filed any more infringement or dilution litigation. The only thing that we did about Gilly Hicks was we tried to expand the rule litigation on remand to encompass that. And I'll tell you that the use that's being made right now, the commercial use, is very narrow. It's on a site that essentially sells, and stores that essentially sell underwear. It's used on a few products. We're assured that they have big plans for this trademark. And if they launch in a different way, we would reserve the right to try to attack that at the time. Right now, we're limiting our challenge to their application and their registration. Do you read anything about... Let me step back. When Congress changed the statute in 2006, it changed the list of factors. And one that it removed made express reference to channels of commerce. And then substituted other things about, including intent to create an association and whether there's actual association. Is there anything significant about Congress's having removed the express reference to the channels of commerce? Because on its face, that might suggest that it's a mark-to-mark comparison rather than one that depends on how the defendant is specifically using the mark. Your Honor, I don't think there is any significance to it. The Ninth Circuit decision in our case speaks to the fact that the factor 10 test is a non-exclusive list. It's non-exhaustive. Anything that's pertinent can be introduced to determine whether there is or whether there is not a likelihood that our trademark would be blurred by the use of theirs. And certainly in the trial court, they argued that the limited use that they were So I believe that the basic test for dilution remained the same, which is that it's an association that arises out of the similarity of the mark that causes a blurring. And then there were a list of factors that were given. And as we know from the Levi Strauss v. Abercrombie decision in the Ninth Circuit, we're supposed to make sure that all of those relevant factors and any other relevant factors are considered when it's determined whether there's dilution. And as I say, I think it's in that substantial association equation that the issue in the district court is different from the issue before the board, where again, this abstraction needs to be determined that the goods are going to move everywhere from both parties. And as I say, there are a number of cases that talk about when you're talking about direct head-to-head competitors, how this association is very similar to and is essentially a broader standard for dilution that encompasses the likelihood of confusion analysis, which is why I say at the end of the day, You're well into your rebuttal time. Do you wish to save it or use it?  Yes, good morning, Your Honors. May it please the Court. My name is Mike Keyes. I'm with the law firm of K&L Gates. I'm with my colleague, Whitney Barron, also of K&L Gates, and we represent Abercrombie & Fitch Trading Co. Your Honors, if ever there was a case for collateral estoppel, this is it. After 18 months and after the parties expended nearly $3 million in attorney's fees. I'm sorry, but there was no resolution in the California litigation of likelihood of confusion for all the possible uses that you might make of the mark under your registration, only on the infringement side as to the rule use, right? No, I don't think that's correct, Your Honor, and here's why. Because if you look at the complaint, what the allegations were, what they were claiming, is that they specifically referenced this A&F stitching design, referencing the complaint. The stitching design is on clothing. Right, but the complaint doesn't determine the scope of what was actually litigated and decided. The evidence and the rulings determine that, not the complaint, for issue preclusion. That's absolutely correct, but the complaint is instructive because it lays out what the allegations were, what the claim was that was at issue, and what was ultimately decided by the court and the jury. So, in the complaint, one of the requests for relief was, they asked that the trial court direct the PTO to refuse registration to trademark application serial numbers 368 and 782. Those are the exact applications. Right, but that's because if they were right even on the narrow rule line use, then registration would have to be denied. But the arrow of logical implication does not go the other way. It does, Your Honor, because the goods at issue there are the exact same goods that are at issue here. So, there was... One category of goods. We're only talking about... It wasn't just one category of genes. If you look in the, and this is in the Judge White's findings of fact and conclusions of law, he references that there is the applications, the trademark applications. And he does indicate that there, and this is finding number 11, he indicates that it's primarily on blue denim jeans, and then cites a number of trial exhibits, which included shorts, skirts, all of the other goods that are at issue in the application here. Well, rural products, though. They're rural products, that's correct, but it's the same... How do you square your argument that somehow that makes it cover every possible use when the same trial judge didn't let them expand the litigation to include the new products, the GILI products, on grounds that they were unrelated to the claims that were asserted, that that would be unduly expanding the litigation? What Judge White found, Your Honor, is that when they came back and said, we want to expand the litigation because this is a new use. This is a new use in commerce, different from the other use of rule. Judge White said, I'm not persuaded. This is the same use. He said that? What he says in his order is, I'm not persuaded. It's not persuasive, that what they were claiming is that this is now a new use, that we need to expand the litigation. He said, I'm not persuaded that you should be allowed to expand this litigation to include that. That's correct. But he didn't say the reason you can't expand this litigation is because it was already litigated. That's not what he said. That's not what he said. That's what he just said he said. What the order says is, I'm not persuaded, that I don't find Levi's arguments persuasive. The arguments that were posed to the court is, this is now a brand new use. This is a new use in commerce on new goods that we're going to need to expand the litigation. And the judge said, I'm not persuaded. How we interpreted that, Your Honor, is it's not a new use. If you look in the record, it's at a record of 385. I don't even understand that. The trial record very clearly discloses that the rural products were at issue, that the channels of commerce relating to the rural products were at issue, that the way those rural products were advertised, who they were advertised to, that all of those things were, as they always are, relevant to the likelihood of confusion. And you're telling us now that that doesn't matter, that you are actually litigating a much broader claim? Your Honor, what we were litigating was over the use of the rural design with respect to the goods that were at issue, the goods at issue in the registration. It's the exact same class of goods. Were you using, other than the Jilly Hicks, which we'll put aside for a minute, were you using that design on anything other than rural products at the time? No. They were all rural branded products. So how could they have even sued as to non-existent products? But it's the same types of goods that were listed in the application. It was skirts, jeans, shorts, and those are the exact goods that are... Let me just ask it this way. Your application isn't restricted to use of the mark on products sold through 27 separate stores at a price point that would make it pretty hard for people to think this is Levi's, right? That's correct. There is no restriction. So the jury couldn't have resolved it? Well, they resolved the issue with respect to the goods that were at issue, which were the goods with the rural design that included the jeans, the pants... Can I ask you the same question I asked your colleague on the other side? Not about issue preclusion, but about claim preclusion. Our decisions in Jett and Mayer Berkshire, which were the ones that the TTAB relied on to reject claim preclusion, said no claim preclusion by a prior non-infringement judgment. No claim preclusion of the registration proceedings, whether opposition or cancellation. We have two judgments here, and one of them is this dilution judgment that came after the case returned from the Ninth Circuit. On the assumption that Jett and Mayer don't squarely hold whether there's claim preclusion on the basis of a dilution judgment, why does their logic not extend to eliminate or prevent claim preclusion? Because it makes no more sense to insist that Levi Strauss have tried to present evidence on dilution as to the full range of your possible use of this mark than it would for them to present evidence as to the likelihood of confusion for the full range of possible, but yet non-existent. Your Honor, if I understand your question, let me answer it this way. Again, at trial, the issue was the use of the rural stitching design on those category of products that were set forth in the application. And that was the issue for dilution as well as infringement? That was the same issue that was, yes, that was litigated for purposes of the dilution decision as well. Yes, that's correct. But the reason why we believe that the judge's decision bars this claim as well is Judge White made findings. They were not overturned by the Ninth Circuit, and I think that's an important point. The Ninth Circuit said, no, you need to go back. But when the judgment on dilution is overturned, none of the findings at that point becomes necessary to support that judgment, which is an element of issue preclusion. There were still findings, right. But none of them could possibly be necessary to support the only surviving judgment there is on dilution, which is the contentless one of dismissal without was not just vacated, actually reversed. It was reversed for the court to reconsider the facts in light of the new standard. Right. And the Ninth Circuit said that the legal error in the court's analysis infected the entire analysis and vacates the judgment. There's nothing left at that point. There's no findings that still stand. Your Honor, as we read the court's decision, the Ninth Circuit said, you need to go back and reconsider the facts that were presented at trial under the TDRA, the amended TDRA that we've now interpreted to mean that you look at. Right. But the Ninth Circuit didn't say, we find all of these findings of fact to be appropriate and go back and take all these findings of fact, none of which we have any problem with, and apply a new legal standard to it. That's not what they said. That's what you believe they said, but that's not what they said. They vacated the entirety of the judgment and said, reassess the case in light of the appropriate legal standard. And then what happened is before Judge White made a determination, before he could make a determination, Levi's decided to dismiss the case. Because you stopped using the product, right? You stopped using the mark on the product. Right. The mark was still being used on the different product that the court would not let them litigate. On a different product that the judge said, we're not persuaded that this presents a new use. That's how we interpreted Judge White's decision there. I think it's important to point out that all of the authority that Levi Strauss relies on for purposes of issue preclusion here, none of it deals with the PTO, opposes a particular mark there, suspends that proceeding in favor of federal court litigation, and asks the federal court to make a determination that the registration shouldn't issue. And then ultimately, when they lose a trial, they go right back to the PTO. Maybe this is unique. I would have no way of knowing that myself. But it seems, as I understand the relevant law here, a perfectly natural thing to do when the PTO proceeding is about a broad range of things. The district court proceeding is about one subclass. If they're right about the subclass, they win the PTO proceeding. If they're wrong, there's still a lot left to litigate in the PTO proceeding. Your Honor, I do think it's a rather unique circumstance here, where you would ask the federal trial court to actually say that these registrations are not capable of being registered with the PTO. And then once you've expended a substantial amount of time and money, and lost, and dismissed your case with prejudice, you go back to the PTO and take a second bite at the apple. Different forums, different standards, different issues. I mean, it happens all the time. And it does. I mean, we have parallel proceedings in all kinds of circumstances. Yes, Your Honor. Or sequential proceedings, depending on how you look at them. Again, our position would be that given the circumstances of this particular case, the relief that was requested, what was litigated at trial, the jury determination, ultimately Judge White making these findings, although the Ninth Circuit did reverse on the PTO, as the TTAB said, those are central to the inquiry here. The marks are not visually similar. That finding remains intact. And so that's what the TTAB was relying on. Similarity of the goods, same goods that are before the PTO with respect to the registration. Again, so you're saying that the finding that had to do with the dilution claim remains intact. So your argument depends on that, right? That's correct. If we believe that when the Ninth Circuit vacated that judgment in its entirety, that that doesn't remain intact, then your argument on dilution falls. I think that's correct, Your Honor. If this Court decides the findings of fact that were made by Judge White are no longer in full force and effect, then I would have to concede that, I think. I think for purposes of issue preclusion here, it depends on there being an identity of issues that were already decided at the trial court by Judge White and by the jury. Well, the jury's determination related only to infringement, correct? They had the advisory, but again, that would rise and fall with the dilution claim if we think the Ninth Circuit's vacation of that claim was broad, right? That's correct, yes. It was just an advisory jury. But as far as the infringement claim, of course, that was never appealed from. Right. At some point, you argued in your brief, as I understood it, that you wanted us to take that advisory finding on the dilution claim and read it into the infringement finding and say that that's why they made their decision. But we can't really second guess what a jury did when it's a black box verdict, can we? No, I don't think so, Your Honor. But of course, the jury ultimately found no infringement, which necessarily required them to look at similarity of the marks. And they weren't similar enough, according to the verdict, in order for there to be infringement here. So just in closing, again, we think that if there is a case where collateral estoppel should apply, it should be this one. The issues were raised by Levi Strauss with respect to the registration at trial. The relief was denied. They ultimately dismissed this case. And now they're trying to come back and take a second shot through the PTL. We don't think it's appropriate. We think collateral estoppel should apply. Thank you, Mr. P. Mr. Gilchrist has a little rebuttal time, about three minutes. Thank you. Thank you, Your Honors. Your Honors, actually, I will submit, unless Your Honors have any further questions about, well, anything, but particularly the claim preclusion The claim preclusion as it relates to delusion, which seemed to be the one issue that we had talked about when I was arguing before. If you have any questions about that or anything else, but otherwise, I'll submit. Thank you, Mr. Gilchrist. The case will be taken on a submission. Thank you, Your Honors.